UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Demandforce, Inc., Sesame Communications, Inc., and Henry Schein One, LLC, | Civ. No. 19-1116 (PAM/HB) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Patterson Dental Supply, Inc., | |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Dismiss Counts II through VI of the Amended Complaint. For the following reasons, the Motion is granted.

**BACKGROUND**

Defendant Patterson Dental Supply is a software company that develops and licenses a computerized practice management system to dental practices. This system, called Eaglesoft, allows dental practices to efficiently manage patient records, billing, and insurance reimbursement, among other tasks. (Am. Compl. (Docket No. 71) ¶¶ 26, 9.) Plaintiff Demandforce, Inc., is a wholly owned subsidiary of Plaintiff Sesame Communications, Inc. (Id. ¶ 3.) The two entities develop and license software to dental practices to allow the practice to automate its appointment reminders to patients. (Id. ¶ 2.) The Demandforce/Sesame software works in conjunction with the practice's existing practice management software, such as EagleSoft. (Id. ¶ 24.) Because of this, Demandforce and Sesame enter into license agreements with the practice management software developer. Plaintiffs' agreements with Patterson are called Token Agreements,

because they provide Demandforce and Sesame with "tokens" that permit access to information in the practice's Eaglesoft system database. (Id. ¶ 32; see also Lewis Decl. (Docket No. 20) Exs. C, D (Token Agreements between Plaintiffs and Patterson).)

Plaintiff Henry Schein One, Inc. ("HS1") is a joint venture between Sesame's parent corporation and a subsidiary of Henry Schein, Inc. (Id. ¶ 4.) Henry Schein is a developer and licensor of practice management software to dental practices and is a direct competitor of Patterson. (Id. ¶ 5.) HS1 "combines the practice management software of Henry Schein and the marketing automation and customer communications software of Demandforce and Sesame into a single connected management system targeted to dental practices . . . ." (Id. ¶ 4.)

The parties were engaged in negotiations regarding new Token Agreements when Patterson learned of the HS1 joint venture. (Id. ¶ 36.) The negotiations were unsuccessful, and shortly after the public announcement of HS1, Patterson terminated the Token Agreements with Demandforce and Sesame. (Id.) According to the terms of the Token Agreements, any party may terminate the agreements for any reason with 90 days' written notice. (Lewis Decl. Ex. C ¶ 9(a).) Patterson's termination notices were effective on October 31, 2018.

Patterson then began to send notices to its customers who also used Demandforce and Sesame products. These notices stated that, after October 31, 2018, "any interface between Eaglesoft and [Plaintiffs'] products . . . will no longer be permitted." (Am. Compl. ¶ 38; see also Lewis Decl. Ex. G.) Plaintiffs also contend that "Patterson further informed one or more customers that continued use of [Plaintiffs'] products by the customer after

2

that date would be unlawful." (Id.) Plaintiffs do not specify whether this "unlawful" statement is separate from the "no longer permitted" statement in the letters Patterson sent.

According to Plaintiffs, they have attempted to reach a "commercially reasonable solution" to continue doing business with Patterson but have been unable to do so. (Id. ¶ 42.) Customers have stopped using Plaintiffs' products "because of the fear Patterson has improperly and unlawfully sown in the marketplace." (Id. ¶ 46.)

Plaintiffs first brought suit in California, alleging various torts under California law and seeking a declaratory judgment regarding their and their customers' rights. Patterson moved to dismiss and to transfer venue, and the California court transferred the case to Minnesota without addressing the merits of the motion to dismiss. Shortly thereafter, Plaintiffs amended their Complaint to assert tort claims under Minnesota and Delaware law. Specifically, Plaintiffs contend that Patterson's conduct amounts to product disparagement under Minnesota law (Count II), trade libel under Delaware law (Count III), violation of the Minnesota Deceptive Trade Practices Act (Count IV) and Delaware Deceptive Trade Practices Act (Count V), and unfair competition under Delaware law (Count VI). Count I seeks a declaration "that [Plaintiffs'] actions and those of their dental practice customers who utilize Plaintiffs' Products do not violate any of Patterson's legal rights and that Plaintiffs' customers may continue to utilize [Plaintiff's] Products." (Id. ¶ 66.) Patterson has moved to dismiss the tort claims but not the declaratory-judgment claim.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678.

Patterson argues that the parties' Agreements allowed it to do what it did, and that Plaintiffs have failed to plead any facts to establish that its statements were false. In other words, Patterson contends that its statement is true—connection between Plaintiffs' products and Eaglesoft would "no longer be permitted" after October 31, 2018, because, having terminated the Token Agreements, Plaintiffs' products no longer had a license to access Eaglesoft. Plaintiffs do not dispute that a true statement cannot form the basis of any of Plaintiffs' tort claims, whether under Minnesota law or Delaware law.

Plaintiffs counter that whether a statement is true or false is a question that cannot be resolved on a motion to dismiss. But this is not a case where the Court must accept a plausible allegation as true. Rather, this is a case where the allegation is not plausible because of the other allegations in the pleadings and information in the documents "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quotation omitted). Plaintiffs' Amended Complaint references

4

the parties' Token Agreements, and thus those agreements are necessarily embraced by the pleadings.

The pleadings and the Token Agreements establish that Patterson's statements regarding unpermitted interface are true. Patterson terminated the parties' Agreements, as the Agreements allowed it to do. And after the Agreements' termination, Plaintiffs' products were no longer allowed to interface with Eaglesoft.[1] Plaintiffs' tort claims regarding Patterson's statements in the customer letter must be dismissed.

Whether Patterson's alleged statement—that any use of Plaintiffs' products after October 31, 2018, would be "unlawful"—is true is less obvious. As noted, Plaintiffs do not specify whether this is a separate statement from the letters Patterson sent. (See Pls.' Opp'n Mem. (Docket No. 78) at 13 ("The statement that continued use of the software 'will no longer be permitted' is also simply another variation of this same statement [that use would be unlawful].").) Indeed, in the hearing on this Motion, Plaintiffs' counsel stated that Patterson's statement regarding unpermitted use is equivalent to stating that the use would be unlawful. Counsel did not, however, indicate whether Plaintiffs allege that Patterson's "unlawful" statement was separate from the unpermitted use statement.

Assuming for the purposes of this Motion that Plaintiffs have sufficiently alleged that Patterson made a separate statement that continued interface with Plaintiffs' products would be unlawful, the pleadings and documents do not definitively establish that such a

---

[1] Plaintiffs' argument that federal healthcare privacy laws prevent Patterson from restricting access to patient information is not well taken with regard to Plaintiffs' tort claims. Patterson is not preventing access to patient information, it is enforcing its rights with regard to the use of its software.

5

statement is true.

Patterson argues that dismissal is nevertheless appropriate because Plaintiffs have not pleaded this claim with sufficient particularity, and the tort claims involved here require compliance with the heightened Rule 9(b) pleading standard. This Rule provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs do not dispute that their Minnesota claims require heightened pleading but argue that the Delaware claims do not require anything more than a "short and plain statement" under Fed. R. Civ. P. 8(a)(1).

Most of Plaintiffs' Delaware claims sound in fraud and require heightened pleading, just as the Minnesota claims do. See E.I. Dupont de Nemours & Co. v. Unifrax I LLC, No. 14cv1250, 2015 WL 4641615, at *1 (D. Del. Aug. 5, 2015) (dismissing Delaware Deceptive Trade Practices Act claim for failure to comply with Rule 9(b)); Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc., 684 F. Supp. 2d 541, 546 (D. Del. 2010) (finding unfair competition allegations sufficient under Rule 9(b)).

The only claim that is arguably not subject to the heightened pleading requirement is Plaintiffs' Delaware trade-libel claim, because there is no authority either applying Rule 9(b) or declining to apply Rule 9(b) to a Delaware trade-libel claim. This is likely because it is an open question whether Delaware even recognizes a cause of action for trade libel in the first instance. See Tri-State Energy Solutions, LLP v. KVAR Energy Sav. Inc., 884 F. Supp. 2d 168, 175 n.3 (D. Del. 2012) (noting that the parties assumed the existence of a claim for trade libel under Delaware law, but cited law from other jurisdictions or for other types of claims in support of that assumption). But most courts require heightened pleading

6

for trade-libel claims. See G.U.E. Tech, LLC v. Panasonic Avionics Corp., No. SACV 15-789, 2015 WL 12696203, at *4 (C.D. Cal. Sept. 15, 2015) ("[M]ost courts apply some sort of heightened pleading standard to trade libel claims."). Plaintiffs have cited no contrary authority. Assuming that Delaware recognizes a cause of action for trade libel, Rule 9(b) applies to that cause of action.

Plaintiffs argue that they have pled their claims with sufficient particularity under the Rule. But the allegation that an unidentified individual at Patterson allegedly told "one or more" unidentified customers that continued use of Plaintiffs' products would be "unlawful" does not describe the alleged conduct with particularity. (Am. Compl. ¶ 38.) Indeed, Plaintiffs' refusal to specify whether this is a separate statement or whether it is an implication drawn from Patterson's letter to its customers demonstrates that Plaintiffs have not pled their claims regarding this statement with particularity. Plaintiffs contend that Patterson knows which of its employees said this to which customers, but this contention ignores Rule 9(b)'s requirements. It is always the case that a defendant should know how it defrauded someone, but the Rules require a plaintiff to set forth the circumstances of that fraud with particularity. Plaintiffs have utterly failed to do this here, and even if the "unlawful" statement is false, Plaintiffs have failed to plead any claim regarding this statement with particularity as Rule 9(b) requires.

Patterson asks that the Court dismiss Plaintiffs' claims with prejudice, noting that this is Plaintiffs' second Complaint. But the first Complaint raised claims under California law; the Amended Complaint is Plaintiffs' first attempt to set forth claims under Minnesota and Delaware law. Dismissal without prejudice is therefore appropriate.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Patterson's Motion to Dismiss (Docket No. 73) is **GRANTED**; and

2. Counts II through VI of the Amended Complaint (Docket No. 71) are **DISMISSED without prejudice**.

Dated: September 26, 2019

*s/ Paul A. Magnuson*
PAUL A. MAGNUSON
United States District Court Judge
